JOHN J. FITZGERALD *vs.* PAWTUCKET STREET RAILWAY.

PROVIDENCE—MAY 21, 1902.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1)  *City of Pawtucket.  Common Council.  Meetings.  Adjournment.
Quorum.  Tenure of Office.*

Charter of the city of Pawtucket provides, section 17, "The aldermen and common councilmen shall meet . . . on the first Monday of January in each year at 10 o'clock in the forenoon." The charter also provides, section 15, that the tenure of office of officers shall commence on the first Monday of January, "and they shall hold their respective offices until their successors shall be elected and qualified." It also provides that a majority of each branch shall be a quorum.

An ordinance was passed by the common council December 16, 1901, and by the board of aldermen December 24, 1901 ; a special meeting of the common council was held January 4, 1902, at which the ordinance was returned without the approval of the mayor, whereupon it was laid over to the next meeting, which was to be held January 6, 1902, at 9 o'clock A. M.

On January 6 the president of the common council was present at nine o'clock, but no quorum was present, and at 9:35 he declared the meeting

adjourned for lack of a quorum. At ten o'clock the members of the council assembled, elected a president *pro tem.*, and passed the ordinance:—

*Held*, that the final passage of the ordinance was illegal. As no quorum had appeared within the time named for the meeting it had expired by its limitation of adjournment.

*Held*, further, that, although the members of the old council held their offices until their successors should be qualified, this did not authorize them to continue their meetings into the new year.

*Held*, further, that, in case the new officers should not qualify, the old members might be convened in special meeting to act in an emergency, but they could not by themselves carry along business of the year that had ended.

BILL IN EQUITY seeking an injunction. Heard, and relief granted.

STINESS, C. J. This bill is brought to enjoin the respondents from doing work under an ordinance purporting to have been passed by the city council of the city of Pawtucket January 6, 1902, upon the ground that the ordinance was not legally enacted.

The case is submitted on the bill, and testimony taken at the hearing upon a preliminary injunction.

The facts as shown are that the ordinance was passed by the common council at a meeting held December 16, 1901, and by the board of aldermen December 24, 1901 ; that a special meeting of the common council was held January 4, 1902, at which the ordinance was returned without the approval of the mayor and with his objections thereto, whereupon the ordinance, with the message of the mayor, was laid over to the next meeting, which, by adjournment, was to be held on January 6, 1902, at 9 o'clock A. M.; that on said January 6 the president was present at 9 o'clock, but no quorum was present, and at 9:35 o'clock he directed the clerk of the common council to read the roll-call of its members, and, as no one answered the roll-call, or appeared in the council chamber to transact any business, he declared the meeting adjourned for lack of a quorum. The clerk made record : "An adjourned meeting of the common council was called to order by President Phillips at 9:35 o'clock A. M. January 6, 1902.

President Phillips being the only member present, declared the meeting off for lack of quorum."

The record then shows the following entry :   " Common Council, January 6, 1902.   A meeting of the Common Council was held January 6, 1902, at 10 o'clock, A. M.   All of the members were present except President Phillips.   Common Councilman Sullivan was elected president *pro tem.*   The records of the meeting held December 18, 1901, and January 4, 1902, were read and approved.

" Veto of ordinance authorizing the Pawtucket Street Railway Company to lay rails in certain streets was taken from the table, and the ordinance was passed over the veto by roll-call vote of eleven ayes and three noes."

The charter of Pawtucket, relating to the organization of the city council, section 17, provides :   " The aldermen and common councilmen shall meet in the town record building, or in such other place as the city council may determine, on the first Monday of January in each year at 10 o'clock in the forenoon."

The charter also provides, section 15, that the tenure of office of officers shall commence on the first Monday in January, " and they shall hold their respective offices until their successors shall be elected and qualified."   It also provides that a majority of the members of each branch shall be a quorum.

Several questions have been raised which we need not consider, because, upon the facts as stated, the controlling question is whether the final passage of the ordinance was legal. We think it was not.

Assuming that there was no illegality up to the morning of January 6th, it appears that the time fixed for the meeting of the council was 9 o'clock.   At 9:35, no quorum being present, after a call of the roll the president declared the meeting adjourned.   This was in accordance with the rule laid down by Cushing in Law and Practice, Leg. Assemblies (1856), par. 361 :   " Where the number necessary to form a quorum of a legislative assembly is fixed, without the presence of whom no business can be entered upon or proceeded

with, the inability extends and applies to questions of adjournment as well as to other matters of business, and, if a quorum is not present, no question of adjournment can properly be proposed to the assembly itself for its decision, for it is not then in a condition to decide any question. The only thing that can be done in such an emergency, is, for the presiding officer, or the clerk, if the former is not present, to declare, without putting the question thereupon, that the assembly stands adjourned until the next sitting day. This is as effectual to continue the session as an adjournment on question, and the assembly is as regularly appointed to meet on the next sitting day as it would be by its own order."

In section 362 he adds: "If an hour has been fixed for the meeting, and at the expiration of that hour a sufficient number is not present, the assembly is adjourned until the next sitting day in the manner just stated."

Gen. Laws cap. 40, § 3, provides as to town councils: "Whenever from any cause a quorum of the council shall not be present at the time for any regular meeting thereof, the council clerk shall continue all business," *etc.*, to the next regular meeting.

This section does not require the clerk to adjourn the meeting, but it directs him to continue the business and continues' notice to parties, in the latter part of the section, so that rights will not be lost by the failure of members to attend.

It appears in the present case that no quorum assembled within the hour fixed for the meeting, and record of the fact was duly made by the clerk. At 10 o'clock, the expiration of the hour, members of the council assembled. If the declaration of adjournment by the president was premature it was still effectual, as no quorum appeared within the time named. The meeting had expired by its limitation of adjournment. But a stronger reason for the illegality of the meeting at 10 o'clock appears. That was the precise hour fixed by the charter for the inauguration of the city officers for the new year. The members of the old council held their offices until their successors should be qualified, but this would not authorize them to continue their meetings into the new year.

The municipal year ended at the time fixed by the charter. If new officers should not qualify, councilmen in office might be convened for a special meeting, to act in an emergency, but they could not, by themselves, carry along the business of the year that had ended.

The assembling at ten o'clock was neither an adjourned nor a special meeting. The action at that time was therefore without authority and void.

The ordinance in question was not legally passed.

A decree for an injunction may be entered.

*Arnold Green and J. J. Fitzgerald,* for complainant.